82,851-01

COURT OF CRIMINAL APPEALS
**Att: ABEL ACOSTA, CLERK**          February 10, 2015
P.O. Box 12308
Austin, Texas 78711


Re:  ----- PRO SE OBJECTION TO THE COURT'S FINDINGS OF -----
          FACT AND CONCLUSION OF LAW
          CAUSE NO. 11-04-04686-CR-(1)
               COUNTS I AND II


Dear Mr. Acosta,

Enclosed please find APPLICANT'S PRO SE OBJECTION TO THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW, please file said motion and bring it to the attention of the Court in the above-styled and numbered cause.

Applicant in this case did not receive the Court's Findings Of Facts And Conclusions of Law in time to make a objection in the lower court, that was filed January 22, 2015, however, did not receive until February 5, 2015.


                         Respectfully submitted,

                         /s/ _Daryl Beeson_____

                         DARYL LEE BEESON #1788958,pro se
                         Michael Unit
                         2664 FM 2054
                         Tennessee Colony, TX. 75886


RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 20 2015

Abel Acosta, Clerk


I.L.A.

WRIT NO. _____

CAUSE NO. 11-04-04-686-CR-(1)
COUNTS I AND II

EX PARTE                          §     IN THE COURT OF
                                  §
DARYL LEE BEESON,                 §     CRIMINAL APPEALS
           APPLICANT              §
                                  §     AUSTIN, TEXAS

---

### APPLICANT'S PRO SE OBJECTION TO THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW **DARYL LEE BEESON**, pro se Applicant, and moves this court to find that there is a necessity for an evidentiary hearing, or at least affidavits in resolving the factual disputes raise by the Applicant regrading ineffective assistance claims. It is clear that the trial court did not do an independent review of the record or is there any evidence that the court even read applicant's habeas corpus, it simpy adopted the State's proposed findings of fact and conclusions of law word for word. This findings of fact and conclusions of law were filed the same day January 22, 2015.

## I. FINDINGS OF FACT

In the case at bar, the Court should not have even considered the State's answer to Applicant's habeas corpus. Under the Texas Code of Criminal Procedure Article 11.07, the State only has (15) days in which to respond after said writ is filed with the court, in this case it was filed December 22, 2014, making their responce due on or about January 7, 2015. The State did not file their responce until January 22, 2015, the same day the court adopted the State proposed findings of fact and conclu-

(1)

sion of law.

The Applicant was charged by indictment with two counts of aggravated sexual assault of a child, alleged to have occurred on or about January 24, 2011. The Applicant pled "not guilty" jury found him guilty and assessed his punishment at life imprisoment in each count. The trial court ordered the sentences to run consecutively.

In the Ninth Court of Appeals, Applicant presented three grounds for relief. **Ground One:** The evidence is insufficient to support a conviction for **AGGRAVATED** sexual Assault of a child because there is insufficient evidence to show that appellant **THREATENED** the complainant with death or serious bodily injury as alleged in the indictment; **Ground Two:** The court committed reversible error by **"STACKING"** the sentences or running them concrrently; **Ground Three:** The court of appeals has the power to address unassigned error whether at the trial or appellate level.

The Ninth Court of Appeals affirmed the applicant's convictions and sentences, which became final on October 28, 2013.

On December 22, 2014, the Applicant filed his first applications for writ of habeas corpus pursuant to article 11.07 of the Texas Code of Criminal Procedure, alleging the following grounds:

**GROUND ONE**
APPLICANT WAS DENIED HIS DUE PROCESS RIGHTS
AND ALSO HIS CONSTITUTIONAL RIGHT TO COUNSEL

**GROUND TWO**
TRIAL COURT'S CLEAR ABUSE OF DISCRETION IS SHOWN IN
ADMITTING HEARSAY VIDEORAPED INTERVIEW

**GROUND THREE**
TRIAL COURT VIOLATED APPLICANT'S DUE PROCESS RIGHTS BY
DENYING HIS MOTION FOR CONTINUANCE

**GROUND FOUR**
INEFFECTIVE ASSISTANCE OF COUNSEL FAILURE TO INVESTIGATE
OR PRESENT EXPERT TESTIMONY REGARDING COMPLAINANT'S
MENTAL OR EMOTIONAL STATE

**GROUND FIVE**
INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO HIS FAILURE TO
REQUEST FOR JURY INSTRUCTIONS PURSUANT TO
ARTICLE 38.23 & 38.22, SECTION § 7

**GROUND SIX**
INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO HIS FAILURE TO
INVOKE APPLICANT'S RIGHT TO CONFRONTATION CLAUSE

**GROUND SEVEN**
TRIAL COUNSEL WAS INEFFECTIVE FOR HIS FAILURE TO
IMPEACH STATE'S WITNESS AT PUNISHMENT

**GROUND EIGHT**
TRIAL COURT'S CLEAR ABUSE OF DISCRETION IS SHOWN
IN ADMITTING CELL PHONE PHOTOGRAPHS

Applicant has also file a PRO SE MOTION REQUESTING LEAVE TO
FILE A SUPPLEMENT TO THE ORIGINAL APPLICATIONS FOR WRIT OF HABEAS
CORPUS (11.07), in the District Court for the 221st Judicial
District Montgomery County, Texas and also in the Court of Crimi-
nal Appeals, and they are as follows:

**GROUND NINE**
INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILURE
TO RAISE A MERITORIOUS CLAIM OF DUE PROCESS RIGHTS
AND ALSO HIS CONSTITUTIONAL RIGHT TO COUNSEL

**GROUND TEN**
INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR HIS FAILURE TO
RAISE THE TRIAL COURT'S ABUSE OF DISCRETION IN
ADMITTING HEARSAY VIDEOTAPED INTERVIEW

**GROUND ELEVEN**
INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR HIS FAILURE
TO RAISE THE TRIAL COURT VIOLATING APPLICANT'S DUE
PROCESS RIGHTS BY DENYING HIS MOTION FOR CONTINUANCE

**GROUND TWELVE**
INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR HIS FAILURE
TO RAISE THE TRIAL COURT'S CLEAR ABUSE OF DISCRETION
IN ADMITTING CELL PHONE PHOTOGRAPHS

Trial counsel was informed two days before trial that the
complainant (Bethany) stated that she had **"Multiple Personalties"**

(3)

she described a **"Girl"** named **"Emily"** who exists **"inside her head"** (not a voice as the court has said) whom the complainant has known **"forever"** and who talks to her and **"tells her what to do."** Emily told her to run away that night and to get in the car with Applicant. **(RR Vol.VI.pg.24).**

The complainant said she "Zoned-Out" completely. **(RR Vol.VI.pg. 29).** Complainant says she **"Zones-Out"** multiple times every day, sometimes for long periods of time. She doesn't remember what happens during **"Zoning-Out"** "I could be just in there looking at a clock and a second later it would be like three hours later." When ask how she spells **"Emily"** she spells it, **"E-h-m-m-i-e-h-l-e-e-y."** (RR **Vol.VI.pgs.48,49,51**).

Trial counsel moved for a continuance on the grounds that the information was wholly unanticipated by the defense, and the Applicant's defense would require additional time to prepare for trial and seek expert psychiatric assistance to evaluate the significance of these facts and implications for the defense. However, prosecutor states, "Additionally, we do not anticipate Bethany Cochran testifying until probably late Wednesday or possibly early Thursday. So they have sufficient time from Saturday until the time that she testifies to be able to garner up enough evidence or whatever information they need to sufficiently cross examine her and successfuly use this information at trial. So, for that reason the State is opposed to the motion for continuance." (RR **Vol.II.pg.12,13**).

The trial court denied the Applicant's motion for continuance and proceeded to trial. "I am going to deny your motion for continuance. It is your third one. While I am concerned about

(4)

it being given at this late hour, I do feel as if we have a jury panel outside and I am going to go ahead and go forward." **(RR Vol.II.pg.14).**

In Applicant's memorandum in support of his habeas, stated in the statement of facts he identifies what evidence addititonal investigation would have revealed. "It could have relevance. What are the elements of the offense? One of the elements to the offense are about whether or not a threat was made and whether -- and according to the statements that were made by the complainant. How do we know? We need to dig into, we need to find out to what extent has "Emily" been persuading, has been infuencing Bethany Cochran, the complainant in this case." **(RR Vol.II.pg.8).**

The name of the expert witness counsel had been dealing with and sought advice on how to move forward Applicant does not know. However, it is clear that counsel could have called this witness, and his expert testimony would have shown she suffered from multiple-personality disorder (MPD) an ailment involving several distint "personalities" that takes turns dominating the same body. This would have benefitted Applicant's defense by showing that Bethany the complainant had Zoned-Out, that night and it was "Emily" that the Applicant had "consensual sex" with.

The issue of the Applicant's confession was not if it was contradicted, but if he invoke his constitutional right to counsel, and to end the interview, he did invoke his right to counsel and to end the interview, not once but twice before his confession. The evidence is clear that a factual dispute was raise first during pretrial suppresion hearing, and then later put to the jury as the testimony of detective Funderburk and the

(5)

videotaped interview. In fact Applicant did invoke his right to counsel and to stop the interview, thus, invoking his right to remain silent, this dispute entitled the Applicant to jury instructions, under art. 38.23(a), and 38.22, sec. § 7.

Trial counsel asked about Chery Mullen's prior convictions of assault and theft during her punishment testimony, but failed to impeach her testimony with an affidavit executed by Scott Warren George a few years before the events of this case. Counsel failed to subpoenaed Scott Warren George to testify to what was said in his affidavit in order to impeach Mullen's very daming testimony. (Memorandum at Appendix A).

Mullen had filed assault charges against the Applicant years before the events of this case, however, her testimony was more of a charge of sexual assault and is as follows: "Well, we got into an argument that day. Mr. Beeson got very irate with me over the fact that I would not perform oral sex. And because of that, he threw me against the TV, he choked me, and he pulled a shotgun on me threating my life if I did not perform those duties." **(RR Vol.VII.pg.8)**.

However, in the police report that was filed in that case Mullen states the argument was over drugs not over oral sex. Counseler should have used this report to impeach her testimony. Counseler also knew that the prosecution had found Mullen the night before she testified in a motel with a known drug dealer, but gain failed to put this to the jury.

Counsel also failed to impeach Mullen under TEX.R.EVID. 609, Applicant did identfy those convictions in in his memorandum at appendix C. When counsel asked Mullen of those convictions

she lied and said that it was not her in those convictions, at that point counsel should have used all means at hand to impeach her testimony.

The affidavit executed by Scott Warren George on March 13, 2008, is credible, and counsel should have used this to impeach Mullen's testimony.

### CONCLUSION OF LAW

There are unresolved issues of fact material to the legality of the Applicant's conviction and sentence and there is not ample evidence in the record to show the need for an evidentiary hearing or at the least affidavit from trial counsel as regards to ineffective assistance of counsel, and are as follows:

"Well, Your Honor, once again, my point is that without sufficent time to investigate this and to look into how this is impacting the defense and what adjustments we need to make in our presentation of the defense, it will be denying my client due process. It is an **ineffective assistance of counsel** issue. And we simply need more time."(RR **Vol.II.pg.10**).

In Applicant's first, second, third, and eighth grounds for relief the court says they are not cognzable on habeas because they could have been raised on direct appeal. **Ex parte Nelson, 137 S.W.3d 666(Tex.Crim.App.2004).**

However, Applicant has filed a PRO SE MOTION REQUESTING LEAVE TO FILE A SUPPLEMENT TO THE ORIGINAL APPLICATIONS FOR WRIT OF HABEAS CORPUS. In said motion Applicant is asking the Court to add grounds nine, ten, eleven, and twelve to his applications for habeas, in order to properly address these issues that the court says that are not "cognizable" on habeas review.

(7)

Also Applicant is proceeding pro se in this mater, and moves this Honor Court to reveiw the allegations in this pleadings under the standard of review established by the United State Supreme Court. **HAINES V. KENNER, 404 U.S. 519,92 S.Ct. 594,30 L.Ed.2d 652 (1972).** If the court can reasonably read pleadings to state a valid cause of action upon which litigant could prevail it should do so despite failure to cite proper authority, confusion of legal theories, poor grammar and sentence construction, or a litigant's unfimliarity with pleadings requirements. **BUSH V. U.S., 823 F.2d 909,910 (5th Cir.1987).**

Applicant's trial counsel, failed to properly investigate and sufficienttly prepare a defense in this case after receiving notice two days before trial that complainant had **"Multiple Personalties"** not just a voice in her head. Furthermore, the record shows that trial counsel did consult with an expert and sought advice on how to move forward upon learning about her **"Multiple Personalties"** and is as follows: "I have been dealing with our prychologist expert, and he again urges we need to have either access to her psychiatric history records or access to her teatment provider to investiate this further to see how this has implications for the defense. This is a due process. (RR Vol.II.pg.9)>

Applicant does not know the name of the expert counsel was dealing with, however, it is clear that counsel could have called this witness, and this expert could have shown the complainant suffered from multiple-personality disorder (MPD), an ailment involving several distint "personalities" that takes turns dominating the same body.

As seen in another case dealing with (MPD), **MARK A. PETERSON V. WISCONSIN, 1990CF000280**, three of the complainant's personalities were sworn in. The testimony of the complainant claiming to have (MPD) and could send someone else to prison, as in the case at bar. Circuit Judge Robert Hawley overturned Peterson's Nov. 8, 1990, conviction on sexual assault charges due to the defense had not been allowed to have a psychiatrist examine the woman before trial.

The expert would have show the court that Bethany the complainant did in fact suffer from (MPD) and that it was "Emily" that Applicant had "consensual sex" with that night. The evidence is clear that the complainant "Zoned-Out" that night and it was "Emily" that should have been questioned, at trial not Bethany, because had "Emily" been questioned she would have testified that it was "consenual sex".

In the fifth ground for relief, counsel was ineffective for failing to request jury instructions under articles 38.23 and 38.22 of the Texas Code of Criminal Procedure. Applicant was entitled to request instructions, also for videotaped confessions. art. 38.22 requires those warrning appear on the videotape. **RESENDEZ V. STATE, 256 S.W.3d 669(Tex.App.-Houston[14th Dist.] 2007).**

There became a factual dispute in the evidence between testimony of Detective Funderburk and the video interview that was presented to the jury, as to if Applicant invoked his right to counsel and to stop the interview , thus, invoking his right to remain silent, and to come back another day. Because there was a factual dispute in the evidence Applicant is entitled to jury intruction,

under articles 38.23(a) and 38.22, sec. § 7.

In the sixth ground for relief, trial counsel was ineffective for his failure to invoke his right to confront "Emily". The Complainant (Bethany) stated that she had "Multiple Personalities" (each functioning as a distinct entity) Applicant argues that it was "Emily" that he had "consenual sex" with not Bethany. The complainant says she remembered that she "Zoned-Out" and laid down on her side of the Applicant's bed. The complainant says she "ZOnes-Out" multiple times every day, sometimes for long periods of time. **(RR Vol.VI.pg.49)**. She doesn't remember what happens during "Zoning-Out", "I could be just in there looking at a clock and a second later it would be like three hours later. **(RR Vol.VI.pg.48)**.

Allowing different personalities to give evidence at court, it is a small step from individual representation to accepting the existence of individual entities, and to allowing different alters to give evidence in court. In the USA, it would appear that it is neither a particularly rare, nor recent phenomenon for different "alters" to be allowed to testify. A defining case of legal and procedural difficulties that arose is that of the **STATE OF WISCONSIN V. MARK A. PETERSON, 1990CF000280(1990),** when six of the supposed 47 personalities of a female witnes were sworn in separately.

The 26 year-old Sarah complained that two of her personalities, a child and an adult, had been raped by Peterson, a 29 year-old grocery worker. It was alleged that Peterson had made friends with another 26-year-old personality, called "Franny". He had then been instrumental in calling forth "Jennifer", a 20-year-old

(10)

personality, who, according to Franny, "liked to dance and have fun". Peterson and Jennifer then had sex in the back of his car. During intercourse, another personality suddenly intruded that of a six-year-old named **"Emily"**. Peterson allegedly told Jennifer to tell Emily to keep their activities "a secret". Instead, Fanny and Emily "told" Sarah, the "perdominant personality", who made a complaint to police.

The judge required the woman to take an oath each time that she changed personality, and the lawyers formally introduced themselves to each different personality. The defense attorney made motions in the absence of the jury, reasoning that his client had sex with jennifer, that jennifer was "in touch with reality", and that, even if Sarah didn't know what she was doing in the front seat of Peterson's car, Jennifer did. Peterson then testified that he thought he was having sex with Franny. He stated that he did not know she was ill, but thought she was "a possible promiscuous person". (a statement that acquired new meaning in light of the number of personalities allegely involved in, or at least in "the body" at the time of, the sexual act).

The conviction was reversed on appeal, due to the defendant's expert had not been permitted to examine the complainant. The case is not unique in terms of a "multiple" complaining of rape. In a 1992 case, James and Marilyn Dorsey were found guilty of the rape of a "multiple" and then later that conviction was reversed.

Here in the case at bar, the evidence is clear that the complainant "Zoned-Out" that night and it was "Emily" that should

have have been questioned about what happen that night not Bethany, this failure short-circuited the entire process. The complainant did what she did that night because "Emily" told her to, she was realy down that night and depressed, and didn't care what happened to her that night, and had tried to commit suicide that night, before she got into the car with the Applicant. **(RR Vol.VI.pg.51).**

Applicant argues that it was "Emily" that he had "consenual sex" with not Bethany, also that "Emily" had told him she was 17 years-old that night. If the complainant does not do what "Emily" says she gets realy mad at her. "Emily" tells her to do a mixture of odd and different things and bad things that aren't good for her. **(RR Vol.VI.pg.40-41).** "Emily" was never questioned about her age, or as to being under the threat of any force nor was there ever a deadly weapon exhibited. Applicant was denied effective assistance of counsel for counseler's failure to invoke his right to confrontation of the true complainant "Emily".

In the seventh ground for relief, counsel was ineffective for his failure to impeach Cheryl Mullen, she testified about an assault charge she filed against the Applicant a few years before the events of this case occurred. Counsel's failure to use an affidavit executed by Scott Warren George on March 13, 2008, which Mullen admitted to lying about the assault shortly after it occurred. (Memorandum at Appendix A). Counseler should subpoenaed Scott Warren George to testify to what was said in his affidavit in order to impeach Mullen's very daming testimony.

Mullen had filed assault charges against the Applicant years

before the events of this case, however, her tetsimony was more of a charge of sexual assault and is as follows: "Well, we got into an argument that day. Mr. Beeson got very irate with me over the fact that I would not perform oral sex. And because of that, he threw me against the TV, he choked me, and he pulled a shotgun on me threating my life if I did not perform those duties." (RR **Vol.VII.pg.**8).

However, in the police report that was filed in that case Mullen states the argument was over drugs not over oral sex. Counsel also failed to impeach Mullen under TEX.R.EVID.609, Applicant did identify those convictions in his memorandum at appendix C. When counsel asked Mullen of those convictions she lied and said that it was not her in those convictions, at that counsel should have used all means at hand to impeach her testimony, however, failed to do so. Mullen's testimony is where the State finely put in the minds of the jury that there really was a gun in this case. Applicant's trial counsel was ineffective for failing to impeach Mullen's very daming testimony, and this failure did affect his sentence.

## PRAYER

THEREFORE, the Court of Criminal Appeals should find that there is a necessity for a fact-finding hearing, to adequately address Applicant's allegations, or at least affidavit from counsel, there is not ample evidence in the record for this Court to rule on the relief sought, in claims of ineffectiveness the court should hear from counsel, before entering appropriate findings of fact and conclusion of law.

(13)

Respectfully submitted,

/s/ _Daryl Beeson_

DARYL LEE BEESON #1788958, pro se
Michael Unit
2664 FM 2054
Tennessee Colony, Texas 75886

## CERTIFICATE OF SERVICE

This is to certify that on February 10, 2015, Applicant's Pro Se Objection To The Court's Findings Of Fact And Conclusion Of Law, has been forwarded to Abel Acsta, clerk of the Court of Criminal Appeals at P.O. Box 12308, Austin, Texas 78711, by U.S. Mail.

Respectfully submitted,

/s/ _Daryl Beeson_

DARYL LEE BEESON #1788958, pro se
Michael Unit
2664 FM 2054
Tennessee Colony, Texas 75886

I.L.A.

(14)